SAGNESS, et al, Appellants, v. FARMERS CO-OPERATIVE CREAMERY CO., OF BALTIC AND DELL RAPIDS, et al, a Corporation, et al, Respondents

(293 N. W. 365.)

(File No. 8350. Opinion filed July 26, 1940.)

**Roy E. Willy** and **B. O. Stordahl,** both of Sioux Falls, for Appellants.

**Krause & Van Buren,** of Dell Rapids, for Respondent.

WARREN, J. This cause originated through an injunction proceedings for the purpose of restraining defendant corporation from moving its principal place of business and creamery from Baltic to Dell Rapids, South Dakota. The plaintiffs filed a petition asking for an interlocutory injunction. The court thereupon issued an order to show cause why an interlocutory injunction should not be issued against moving its principal place of business and creamery from Baltic to Dell Rapids, South Dakota. Upon the return day of the order, the parties made certain agreements and stipulations as to the issues raised by the pleadings and for the court to hear all the issues raised thereby. Upon the hearing the court denied the application, and made findings, conclusions, and a judgment in favor of the defendants. The plaintiffs thereupon perfected an appeal from the judgment. The issues presented to this court upon appeal are raised by four assignments of error. Under Chapter SDC 11.11, we find certain statutory provisions relating to co-operative associations. Other sections also become important in the consideration of the application of the law to the facts before us, SDC 4.1610 (Laws 1923, c. 15); SDC 4.1616 (Laws 1923, c. 15); and SDC 40.1607 (Laws 1929, c. 91).

There seems to be no contention between the parties that shares of stock should be voted rather than that each individual stockholder should have a vote per person. As respondent states in its brief "that even though a stockholder may own more than one share of stock he may in person, as such holder of said shares, not vote more than one time thereon". Sec. 8844, Rev. Code 1919. Certain find-

ings of fact and portions of other findings made by the court reflect sufficient of the issues to an understanding of the facts upon the appeal proceedings before the court and we quote:

"That the plaintiffs are the owners of either common or preferred stock or both, of the defendant corporation, and brought this action in their own behalf as well as some sixty other stockholders similarly situated".

"That the date of the annual meeting of said corporation for the year 1939 was fixed by the Board of Directors of said corporation for May 26th at the hour of ten o'clock in the forenoon at Baltic, South Dakota, and notice thereof was duly given to the stockholders; and in said notice said stockholders were duly advised that in addition to the election of directors and the consideration of other matters that might properly come before said annual meeting, there would be submitted to said meeting a proposal to amend Article III of the Articles of Incorporation of the company to change the place where the principal place of business of said corporation should be transacted from Baltic, South Dakota, to Dell Rapids, South Dakota."

"That at said annual meeting for 1939 a quorum of more than thirty (30) common stockholders was present, and said meeting was duly and regularly convened, and the usual business transacted. * * *"

"A motion was made and seconded that said resolution be adopted, and a vote was taken on said matter with the following results: For the resolution to amend, 500 votes, consisting of 36 votes in person and 464 votes by proxy; against the resolution, 70 votes. The President was in doubt as to the exact number of outstanding shares of common stock of the company, and there not being available a definite record thereof, and the President thus not being able to determine whether or not a majority vote of the company's common stockholders had been cast in favor of the resolution, he stated that he would not make a ruling on the matter. That thereupon a motion was made and seconded to adjourn the meeting to the 8th day of June, 1939, at ten

o'clock in the forenoon at the same place of meeting; and said motion prevailed."

"That said adjourned meeting was duly and regularly convened at said time and place, and that at such meeting a motion was made, seconded, and duly carried that all previous action pertaining to the resolution offered at the earlier session of the meeting on May 26, 1939, as well as the voting on said motion be rescinded and held for naught, the vote on said motion being as follows: For the motion, 543 votes, including 516 votes by proxy; against the motion, 17 votes."

"That thereupon a motion was made and seconded that the aforesaid resolution proposing to amend said Article III of the company's Articles of Incorporation be adopted, and upon a vote on the motion the result was as follows: For the adoption of the resolution, 535 votes, consisting of 516 votes by proxy and 19 votes in person; against the adoption of the resolution, 17 votes. The President thereupon declared that since said motion had received a majority vote of the stockholders of the company, it was carried and the resolution adopted."

Finding 6 contains Section 16 of the by-laws of this corporation which reads as follows: "A quorum for the transaction of business at any annual or special meeting of the stockholders shall consist of thirty common stockholders. At every meeting each common stockholder shall be entitled to cast one vote only, which may be cast by proxy, * * * ."

The proceedings involved herein all occurred prior to July 1, 1939, and the statutes in force at that time concededly must govern, so a discussion of whether or not proxy voting was permissible in a co-operative association must depend upon the construction of our statutes in force and the co-operative's constitution and by-laws in effect at that time. A search upon the question of by-laws authorizing voting by proxy in co-operative associations reveals the following: "At common law it was required that all votes at corporate meetings should be given in person; and this is still the rule, with respect both to nonstock and to stock

corporations, in the absence of express provision to the contrary. A stockholder or member of a corporation cannot give a proxy or power of attorney to another to represent him and vote at a corporate meeting, unless the right to do so is given by the charter or a general constitutional or statutory provision, or by a valid by-law." 5 Fletcher Cyclopedia Corporations, § 2050, p. 167.

Our search does not disclose any statute prohibiting a co-operative stockholder from voting by proxy even conceding that Chapter 103, Session Laws 1931, was enacted depriving the stockholder of the right to be represented at a stockholder's meeting which up to that time had been permitted by Section 8845. It will be observed that the provision which was vitiated by Chapter 103, 1931 Session Laws, referred specifically to the investment of its reserves, and could in no sense deprive the stockholders from voting by proxy upon all other matters not specifically provided for by this section. Clearly we are not permitted to interpret the language in Section 8845 as declaring that the right to vote by proxy upon all other matters is prohibited just because there is a specific enactment as to the investment of the co-operative's reserves. The fact that the legislature by Chapter 103, 1931 Session Laws, dropped out the stockholder's right to be "represented" does not detract or alter the stockholder's right to vote by proxy. It must be remembered that under the general rules prevailing with respect to private corporations organized for a profit, that the right to vote by proxy is well established. Chapter SDC 11.01 of our general corporation laws makes a sweeping declaration that "the provisions of this title shall apply to all corporations other than public, unless from the context of any statute a different intention plainly appears". SDC 11.0101. Following the above provision we find that by statute corporations are divided into public or private, and necessarily the respondent Farmers' Co-operative Creamery Company is a private corporation and that under Section SDC 11.0104, subdivision 6, it has the right to make its own by-laws not inconsistent with the laws of the land.

"Every corporation, as such, has power: * * *

"(6) To make by-laws not inconsistent with the law of the land, for the management of its property, the regulation of its affairs, and for the transfer of its stock."

And further we find Section SDC 11.0602: ·

"Any such corporation may by its by-laws unless otherwise specifically provided by law provide all matters necessary for the conduct of its business affairs in accordance with this law and its articles, and among other things may provide: * * *

"(3) The method of voting in person or by proxy."

And Section SDC 11.0711: "At all elections or votes had for any purpose there must be a majority of the subscribed capital stock or of the members represented either in person or by proxy in writing."

Followed by SDC 11.1003: "* * * In addition to the by-laws which may be made by corporations generally, a co-operative corporation may adopt a by-law defining the amount of stock or the number of stockholders or members necessary to constitute a quorum, notwithstanding the provisions of section 11.0711." '

 The enactment of by-law Section 16, quoted · earlier in the opinion, providing for voting by proxy was a power granted to the corporation by statute, as it seems clear to us that the general laws relating to corporations apply also to co-operatives. Sections 8286 and 8285 (pp. 1203 and 1205), 16 Fletcher Cyclopedia Corporations.

Independent of statute there is authority to the effect that a by-law alone may authorize voting by proxy without express authorization by statute.

"It is evident, from an examination of the cases, that the courts which follow the analogy of the common law, hold that by-laws authorizing votes by proxy are invalid. But the better reason, as well as the weight of authority, is in support of the proposition that the corporation may by by-law authorize stockholders to vote by proxy. Indeed, no sufficient reason can be shown why this should ·not be. Where the stockholders themselves adopt the by-laws for the regulation of the corporation, they should certainly be at liberty, and ought to have the power, to regulate their

method of voting." Thompson on Corporations, vol. 2, § 970, p. 348.

"A by-law enacted by a private corporation, authorizing the stockholders at their meetings to vote by proxy, is valid." State v. Tudor, 5 Day, Conn., 329, 5 Am. Dec. 162.

██ Appellants contend that there are only two questions to be considered on this appeal. Having dealt with the first question, we now proceed to deal with the second question which concerns the action taken by the officers and directors in again submitting the proposition of amendment of the corporate articles of the respondent corporation to a vote at the adjourned meeting of the annual meeting, after this proposed amendment had been voted upon by the stockholders. It is true that the members of the corporation had convened to do certain acts at the meeting regularly called, yet nowhere does it appear in the record and the court did not find that adjournment was not made in good faith and that fraud had been perpetrated, and it must be conceded that the power to adjourn resides in the stockholders assembled at the meeting. This power was exercised, and a valid adjournment resulted by the stockholder's action to another date, and the second meeting was a continuation of the annual meeting, and the acts and proceedings which could take place on the first day could also take place with like force and effect on the second day of the meeting, to which an adjournment had been taken by the stockholders. 14 C. J. 921, (§ 1436) 10.

"The stockholders could legally consider and determine at an adjourned annual meeting, business proposed but not concluded at the annual meeting." Granger v. Grubb, 7 Philadelphia, Pa., 350.

If the stockholders had the power to act at the regularly called meeting, as appellants readily concede, we must necessarily hold that this same constituted lawful stockholders' meeting and that body would have the power to adjourn to another date and could at the adjourned meeting conduct business proposed but not concluded at the first day of the meeting. If an annual meeting is adjourned to meet on another day, the adjourned meeting is merely a legal continua-

tion of the annual meeting, and the voters can do any act which might have been done if no adjournment had taken place; therefore, the stockholders of the corporation at the adjourned meeting were still in session with like force and effect and could do all things that they could have done had no adjournment been taken and accordingly were within the stated rule competent to alter or change any resolution on motion adopted by them. State ex rel. Springs v. Ellison, 106 S. C. 139, 90 S. E. 699, 13 A.L.R. 130 and annotations at pages 131, 132.

"* * * An adjourned meeting of either a stated or special meeting is 'a continuation of the same meeting, and at such adjourned meeting the council may do any act which might have been done if no adjournment had taken place,' * * *." Vogel v. Parker, 118 N.J.L. 521, 193 A. 817, 818.

The fact that more votes were cast at the adjourned meeting because of new votes obtained since the regular meeting does not seem to alter the situation.

"But even in an adjourned meeting stockholders not represented at the first meeting are entitled to vote, * * *." Bridgers v. Staton, 150 N. C. 216, 63 S. E. 892, 894.

We therefore conclude that regardless of the vote and action taken thereon at their first convening, the consideration of the matters complained of and passed upon at the adjourned meeting was in all respects legal, and that the court did not commit error in so finding and concluding, and that the record amply sustains the learned trial court. Other matters assigned have been carefully considered and are not deemed to merit discussion. Finding no error in the record, the judgment appealed from is affirmed.

All the Judges concur.